ANNIE CRONIN *vs.* BOSTON ELEVATED· RAILWAY COMPANY.

Suffolk.    January 15, 1919. — June 24, 1919.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Practice, Civil*, Judge's charge, Exceptions.

General exceptions to specific portions of a charge to a jury, where there were no requests for rulings on the subject matter of the exceptions, will not be sustained unless substantial error or injustice plainly appears.

At the trial of an action against an elevated railway company for personal injuries caused by a fall due to an alleged defect in the stairway of a station of the defendant, the evidence, both as to the existence of the defect and as to the extent of the injury, was conflicting. In his charge to the jury, the judge, in speaking of the evidence on the question of liability, used the expression, "see if there is anybody . . . of whom you can say, 'I am convinced by that person';" and, discussing the testimony of the experts on the question of injury, the judge stated, "You may pick out one or two of those men that you say you will stand by." The tenor and purport of the entire charge were that the jury were to decide the case according to all the evidence, remembering that the burden of proof was upon the plaintiff to satisfy them on all the features of the case. The defendant alleged an exception "to so much of the charge as said that the jury should try to pick out one witness, because it seems to neglect the question of weight of the evidence." *Held*, that, although, taken by themselves, the expressions of the judge above quoted were objectionable, no substantial error appeared when the charge was considered as a whole.

TORT for personal injuries caused by a fall on a stairway of the defendant's station at Beach Street in Boston. Writ dated November 14, 1916.

In the Superior Court the case was tried before *Hall*, J. The

material evidence is described in the opinion. The defendant made no requests for rulings. The last two paragraphs of the charge of the judge were as follows:

"When you gentlemen go out into the jury room, start this case and work it out, not on the lines of my charge especially — I am only giving you the law with perhaps some suggestions that I hope are practical — but start with that open-mindedness that both these lawyers and their clients are entitled to, and see if you can figure this thing out, based on the proposition I have given you and where you say the burden of proof is. So long as the burden is sustained by the plaintiff, even to the end, she is entitled to have you follow. Wherever that burden falls, there you have got to stop. You will go out in your jury room and you will talk this over and look at it, and try to get it right, under your oath, for both these people, both the company and Mrs. Cronin, to the end that you may do justice. Decide it on the evidence. Don't decide it upon collaterals — that you know somebody else that got hit on the head and had a cancer. That is not evidence. It is the purest hearsay from one man in the jury room to his brothers; it doesn't amount to anything. You have got a right to take the experience you have acquired in this world with respect to disease, however. You have a right to use that in forming your judgment. As I told you before, you have a right to say what are the probable uses of the elevated railroad. That is why you are here, because they are appealing to your judgment. They want your judgment on the evidence, though. This is an important case for both these parties. It has been well tried, I think I may perhaps say fairly tried, and all the counsel can ask on behalf of their clients is that you give them an honest decision of this case, based on the law and the evidence, wherever it leads you.

"As you make up your mind, you will honestly, as under your oath of office you must, as a proposition that conclusively follows, return a verdict for the party that you say is entitled to it."

Other material portions of the charge are described in the opinion.

The jury found for the plaintiff in the sum of $5,000; and the defendant alleged exceptions "to so much of the charge as said that the jury should try to pick out one witness, because it seems to neglect the question of weight of the evidence. 'I would single out one.' That is both on the question of liability and damages."

The case was submitted on briefs at the sitting of the court in January, 1919, and afterwards was submitted on briefs to all the Justices.

*F. Ranney & T. Allen, Jr.,* for the defendant.

*H. A. Wilson, F. Juggins & T. F. Murphy,* for the plaintiff.

CARROLL, J. The plaintiff was a passenger on one of the defendant's cars and when descending the exit stairway of its station at Beach Street, on July 30, 1916, fell and was injured. The plaintiff testified that the cause of her fall was a loose screw which projected from the tread of the top step and that the metal tread of this step was loose. She was cut and bruised as the result of the fall, and contended she was so bruised that a cancer developed on her right breast, which was later removed by an operation.

It was not questioned that the plaintiff was a passenger and by her fall was slightly injured. The defendant produced several witnesses who testified that they examined the steps upon which the plaintiff said she had fallen and could find no loose screw or tread or other defect in them. The experts called by the plaintiff testified that the injury to the breast, caused by the fall, was sufficient cause of the cancer, one of these witnesses saying "that the possibility of recurrence was relatively high." Doctors Whitney and Fairbanks, for the defendant, testified that the blow and injury to the right breast would not be an adequate cause for a cancer. Dr. Fairbanks further stated that when he examined the plaintiff in the presence of her physician, Dr. Granger, in February, 1917, nothing was said by either the plaintiff or her physician about a bruise on the breast. There was a verdict for the plaintiff.

The defendant excepted "to so much of the charge as said that the jury should try to pick out one witness, because it seems to neglect the question of weight of the evidence, 'I would single out one.' That is both on the question of liability and damages."

In *Taft* v. *Seabury,* 11 Pick. 140, where the defence was that the goods sold and delivered were sold on credit, the defendant produced a witness, Chamberlain, who so testified, which testimony was denied by the plaintiff; the judge instructed the jury, if they believed Chamberlain they ought to find for the defendant,

unless from the other evidence and circumstances they should find that the offer of credit was withdrawn and other terms of sale substituted. This instruction was considered erroneous because the proper instruction would have been, "that they should find for the defendant if, upon the whole evidence, they believed that a credit had been given." See, in this connection, *Gray* v. *Boston Elevated Railway,* 215 Mass. 143, 148.

In that part of the charge where the judge was considering the question of damages, referring to the medical experts in the case he said to the jury: "You may pick out one or two of those men that you say you will stand by;" and, when discussing the issue of liability, after directing attention to the statements of the various witnesses called by the defendant on this question, he said: " see if there is anybody . . . of whom you can say, 'I am convinced by that person'?" These instructions would have been objectionable, if they directed the jury to select one or two witnesses and decide the case on their testimony alone, without weighing and considering all the evidence in the case.

To determine the question the entire charge must be considered and if, taken as a whole, the instructions were not erroneous, a single sentence or paragraph cannot be separated from the text as ground for reversible error. General exceptions to specific portions of the charge, where no requests are asked for, will not be sustained unless substantial error or injustice plainly appears. *Commonwealth* v. *Meserve,* 154 Mass. 64. *Dewey* v. *Boston Elevated Railway,* 217 Mass. 599, 604. *Conners Brothers Co.* v. *Sullivan,* 220 Mass. 600, 607. *Adams* v. *Nantucket,* 11 Allen, 203. Taking the charge as a whole, the jury were clearly told many times that the plaintiff must prove her case by a fair preponderance of evidence, that the burden of proof was upon her to demonstrate her case to their satisfaction. There was no substantial error in the charge. It does not appear that any injustice was done the defendant and we do not think the jury were misled.

As we have said, it was denied by the defendant that the stairway was defective and several witnesses were called by the defendant to prove that there was no loose tread or screw. The judge, in calling the jury's attention to what appeared to be a disagreement in the testimony of some of the defendant's witnesses, referred to one witness who claimed the tread was bolted

down by screws to the bed plate, and asked the jury to decide who was right about that, "because the plaintiff has got to have a situation here that would demonstrate to your satisfaction that a condition of looseness existed upon that tread and that there was a projecting screw." Following this he said, "It is pretty important for you to find out whether or not it was bolted down to the bed-plate at the top of the floor, as Frederick says it was," or "it hung over some," as claimed by the defendant's roadmaster.

After referring to other witnesses, called by the defendant, the judge said: "Now is there anybody there that you say among all those witnesses . . . inspected those stairs . . . to see the situation exactly as it was? If you do, you have got a very important witness in this case." Then, referring to the question whether there was a projecting screw and a loose tread, he said: "It is not a question of imagination on either side. You have got to meet it just exactly where it lies. . . . You have got to test out the persons upon the one side and upon the other, and sift them down if you can, see if there is anybody, one or more, that is reliable, of whom you can say, 'I am convinced by that person.'" In this part of the charge relating to the defect, the jury were fully instructed to weigh all the evidence and to test all the witnesses.

The remark concerning the testimony of the witness and being convinced by some one person, cannot be disconnected from the context, and relied on as showing that the jury were misled or directed to decide upon the testimony of one person alone. In this part of the charge the jury's attention was at the time directed to the defendant's side of the case. They were then considering the defendant's witnesses and they could not have understood by this single sentence, in view of all that was said to them, that they were to eliminate all the other evidence in the case.

On the question of damage there was no dispute that the plaintiff had a cancer, but it was disputed that it was caused by the fall. Here again the judge said, "It is for the plaintiff to show you by a fair preponderance of the evidence that the cancer she had was the result of that blow." In charging the jury on this aspect of the case, after referring to the experts called by the plaintiff and the defendant he said, "You may pick out one or two of those men

that you say you will stand by." Then in considering the question of recurrence of the cancer he told the jury: "The burden of proof is on the plaintiff to prove that to you. . . . Satisfy yourself in this case, as abstractly as you can look at it, that what she alleges she has proved. If you are satisfied, if your minds are convinced that the probabilities are based on the medical experience and history, that she is ultimately going to have another cancer, with its results, she is entitled to damages for that." And as he neared the close of the charge the judge said: "So long as the burden is sustained by the plaintiff, even to the end, she is entitled to have you follow. Wherever that burden falls, there you have got to stop."

We have referred to the charge at some length, but even on the question of the plaintiff's damages, although there was one sentence authorizing the jury to pick out one or two men to stand by, the whole tenor and purport of the charge was to decide the case according to all the evidence, remembering that the burden of proof was upon the plaintiff to satisfy them on all the features of the case. From the beginning of the charge to the end it was frequently stated that having heard all the evidence the jury must be satisfied by a fair preponderance of it that the plaintiff's case was established. They could not have understood from the sentence referring to the selection of one or two witnesses that they were to decide upon the question of the plaintiff's damages without reference to all the other facts and testimony bearing on this issue.

Construing the instructions in their entirety, we think the jury were properly directed and there was no reversible error.

*Exceptions overruled.*